## GRANT OF DEVELOPMENT RIGHTS
## AND RIVER CORRIDOR CONSERVATION RESTRICTIONS

KNOW ALL PERSONS BY THESE PRESENTS that **PHILIP PARENT** and **SUZANNE PARENT**, of the Town of Sheldon, Franklin County, Vermont on behalf of themselves and their heirs, administrators, executors, and assigns (hereinafter collectively "Grantor"), pursuant to the authority granted in Title 10 V.S.A. Chapter 155 and in consideration of the payment of Ten Dollars and other valuable consideration paid to his full satisfaction does freely give, grant, sell, convey and confirm unto the **VERMONT LAND TRUST, INC.**, a Vermont non-profit corporation with its principal office in Montpelier, Washington County, Vermont and its successors and assigns (hereinafter "Grantee") forever, the development rights and perpetual and assignable river corridor conservation restrictions, together with non-exclusive easements for access, all as more particularly set forth below, said rights and easements pertaining to a portion only of a certain parcel of land located in the Town of Sheldon, Franklin County, Vermont, and being more particularly described in Schedule A attached hereto and incorporated herein (hereinafter "the Protected Property").

The development rights hereby conveyed to Grantee shall include all development rights except those specifically reserved by Grantor herein, if any, and those reasonably required to carry out the permitted uses of the Protected Property as herein described. The development rights and restrictions hereby conveyed are rights and interests in real property pursuant to 10 V.S.A. §§823 and 6303. The river corridor conservation easement and restrictions hereby conveyed to the Grantee consist of covenants on the part of the Grantor to do or refrain from doing, severally and collectively, the various acts set forth below. It is hereby acknowledged that these covenants shall constitute a servitude upon the land and run with the land.

An objective of the Vermont Agency of Natural Resources, Department of Environmental Conservation's ("DEC") River Corridor Management Program is to assist in the acquisition, management and enforcement of channel management rights and conservation restrictions on land it considers to be within the corridors of sensitive, erosive streams in order to enhance and accommodate floodplain functions thereby reducing erosion and flood damage. Grantor acknowledges that the DEC and any successor agency or department thereto (any reference hereinafter to "DEC" is intended to include any successor agency or department thereto) is an intended third party beneficiary under this Grant of Development Rights and River Corridor Conservation Restrictions (hereinafter "Grant") and covenant not to contest the ability of the DEC to enforce any provision or restriction of this Grant. As a condition of its status as a third party beneficiary, the DEC shall provide technical assistance to the Grantee for any channel management or maintenance activities required under this Grant and shall perform the responsibilities conferred upon it under this Grant.

I. <u>Purposes of this Grant</u>

Grantor and Grantee acknowledge and agree that, consistent with the objectives of the river corridor management program administered by the DEC, the purposes of this grant are to allow the Missisquoi River to re-establish its natural slope and meander pattern and its access to natural floodplains in order to reduce erosion hazards, provide flood inundation and fluvial erosion hazard mitigation benefits, improve water quality through hydrologic, sediment and nutrient attenuation, and to conserve and enhance aquatic and wildlife habitats and the natural processes associated with the Protected Property now and in the future.

Grantor and Grantee acknowledge and agree that this Grant of Development Rights and River Corridor Conservation Restrictions will accomplish the above-recited purposes, and that, more specifically, it is their intent that those purposes be achieved by:

1. Accommodating the anticipated equilibrium conditions and associated physical adjustment processes of Missisquoi River.

2. Minimizing, to the extent consistent with 1), above, future conflicts between the anticipated physical adjustment processes of the river and incompatible land use and other channel management activities on the Protected Property.

These purposes will be advanced by conserving the Protected Property because it possesses the following attributes:

    a) 2,649 feet frontage on the Missisquoi River and an additional 852 feet of frontage on a tributary;
    b) 38.39 acres of land, in which the river is unconstrained by permanent structural modifications and improvements;

c) Missisquoi River, that, with wooded buffers and natural flow, provide an array of ecological benefits including maintaining water quality and providing corridors for species movement; and,
d) additional wetland, upland, and riparian habitat for wildlife.

Grantor and Grantee recognize the Purposes of this Grant and share the common goal of conserving these values by the conveyance of this Grant of Development Rights and River Corridor Conservation Restrictions and to avoid the future public and private expenditures and public safety hazards that will arise from the conversion of the Protected Property and other riparian corridor lands to uses incompatible with the anticipated physical adjustments of Missisquoi River and a stream depicted on the Survey (defined in Schedule A, below) as "stream" (together hereinafter referred to as "the River") and to prevent the use or development of the Protected Property for any purpose or in any manner which would conflict with the intent and Purposes of this Grant. Grantee accepts the development rights and restrictions contained in this conservation easement in order to achieve these objectives for the benefit of present and future generations. The purposes set forth above in this Section I are herein collectively referred to as "the Purposes of this Grant."

II.  Restricted Uses of Protected Property

The restrictions hereby imposed upon the Protected Property, and the acts which Grantor shall do or refrain from doing, are as follows:

1.  No residential, commercial, industrial, or mining activities shall be permitted, and no building, structure or appurtenant facility or improvement (other than fences and at-grade fords of streams, both for agricultural purposes only) shall be constructed, created, installed, erected, or moved onto the Protected Property, except as specifically permitted under this Grant or as may be permitted by Grantee if deemed to be consistent with the Purposes of this Grant in its sole discretion.  The Protected Property shall be used for agricultural, forestry, educational, non-commercial recreation, and open space purposes only.

2.  No rights-of-way, or easements for ingress or egress, driveways, roads, utilities, or other easements or rights shall be constructed, developed, granted, or maintained into, on, over, under, or across the Protected Property, without the prior written permission of Grantee, except as otherwise specifically permitted under this Grant, and as appear of record prior to the date of this Grant.  Grantee may grant permission for any rights-of-way, or easements for ingress or egress, driveways, roads, utilities, other easements or rights, if it determines, in its sole discretion, that any such rights-of-way, easements for ingress or egress, driveways, roads, utilities, other easements or rights are consistent with the Purposes of this Grant.

3.  Except for routine seasonal preparation of agricultural fields for planting that does not require filling or excavation, or disturbances that may be approved as hereinafter provided, there shall be no disturbance of the surface, including, but not limited to, filling, excavation, removal of topsoil, sand, gravel, rocks or minerals, or change of the topography of the land in any manner.  With the prior written approval of the Grantee and DEC, other disturbances of the surface of the Protected Property may be undertaken as may be reasonably necessary to carry out the agricultural and forestry uses permitted on the Protected Property under this Grant, including the installation and maintenance of man-made drainage improvements under Section III(5), below.

4.  Except as otherwise permitted under this Grant, Grantor shall not construct, place, repair, remove or modify structures or structural elements such as revetments, levees, or earthen fills.  Grantor shall not remove or deposit sand, gravel or rock, or otherwise manipulate the River and the other natural watercourses, wetlands or other water bodies in a manner that will alter the natural water levels of the River during ordinary high water flows, or intervene in the natural physical adjustment of said water bodies.

5.  Except as otherwise permitted under this Grant, an undisturbed buffer within the Protected Property, a minimum of fifty feet (50') in width measured landward from the top of the bank of the River as it may move from time-to-time, and also any land located between the top of said bank and the low water mark of the River (together hereinafter referred to as "the Buffer") shall be established and maintained.  No agricultural activities except as permitted under this Grant shall occur within the Buffer. Grantee may grant written permission for a non-commercial, non-motorized recreational trail and/or a new drainage structure through the Buffer to provide for drainage of lands outside the Buffer, if it and DEC determine, in their sole discretion, that any new trail or drainage structure will have minimal impact through or across the Buffer (consistent with Section III(5), below), and is consistent with the Purposes of this Grant.

      6.      No timber harvesting shall be allowed within the Buffer, except when the Protected Property is included in a Forest Management Plan approved by the Grantee or enrolled as managed forest land in the State of Vermont's Use Value program or similar successor program. Harvesting must be conducted consistent with a forest management prescription, which has the primary purpose of maintaining a forested riparian buffer and is consistent with the Purposes of this Grant. The Grantee may grant written permission for a temporary opening and crossing of the Buffer for the purpose of enabling timber harvesting on lands across the River that have no other reasonable access.

      7.      No clearing of existing forests to establish fields, orchards or pastures, shall occur within the Protected Property except with prior written permission from the Grantee, if it and the DEC determine, in their sole discretion, that the clearing of existing woody vegetation outside the Buffer to enable agricultural use will be consistent with the Purposes of this Grant. Notwithstanding the foregoing, Grantor may clear orchards or other tree-based agricultural areas outside of the Buffer when switching from one agricultural use to another.

      8.      The Protected Property shall not be subdivided or conveyed in separate parcels without the prior written approval of Grantee, which approval may be granted, conditioned or denied in Grantee's sole discretion.

      9.      No use shall be made of the Protected Property, and no activity thereon shall be permitted which is or is likely to become inconsistent with the Purposes of this Grant. Grantor and Grantee acknowledge that, in view of the perpetual nature of this Grant, they are unable to foresee all potential future land uses, future technologies, and future evolution of the land and other natural resources, and other future occurrences affecting the Purposes of this Grant. Grantee, therefore, in its sole discretion, may determine whether (a) proposed uses or proposed improvements are not contemplated by or addressed in this Grant, or (b) alterations in existing uses or structures, are consistent with the Purposes of this Grant.

III.      <u>Permitted Uses of the Protected Property by Grantor</u>

Grantor shall have the right to make the following uses of the Protected Property:

      1.      The right to maintain and use cultivated fields, orchards, pastures, existing agricultural access drives and roads which are located outside the Buffer, as it may move from time to time, together with and subject to the restrictions in Section II above, the right to construct, maintain, and repair fences and gravel or other permeable surfaced access roads for these purposes.

      2.      The right to conduct maple sugaring operations, and the right to harvest timber and other wood products, together with the right to construct and maintain roads necessary for both such activities, in accordance with sound forestry practices and in accordance with a forest management plan for which Grantor has received the prior written approval of Grantee. Grantor may conduct maple sugaring operations, and may harvest firewood for heating residences and structures located on the Protected Property, both on existing woods roads only, without submission and approval of a plan. Grantee's approval of forest management plans that may be submitted from time to time shall not be unreasonably withheld or conditioned, if such plans have been approved by a professional forester and if such plans are consistent with the Purposes of this Grant.

      3.      The right to clear, construct, and maintain trails for non-commercial walking, horseback riding, skiing, and other non-commercial, non-motorized recreational activities within and across the Protected Property but outside of the Buffer, all in a manner consistent with the Purposes of this Grant. Non-commercial snowmobiling may be permitted at the discretion of Grantor.

      4.      Notwithstanding anything to the contrary contained herein, following a flood event, Grantor may remove: (a) wood and other non-earthen debris; and (b) with the prior written approval of the Grantees and DEC, silt and other earthen flood debris from those portions of the Protected Property outside the River and the Buffer, but only if necessary to prevent injury or damage to persons or property outside of the Protected Property, or to enable the resumption of agricultural, silvicultural or non-commercial recreational activity, being conducted within the Protected Property prior to the flood event. The approval required under subsection (b) above may be given only if the Grantees and DEC determine, in their sole discretion, that such removal is necessary as stated above, does not interfere with the natural, physical adjustment of the water bodies in the Protected Property, and is otherwise consistent with the Purposes of this Grant.

5. The right to maintain existing drainage improvements on the Protected Property in compliance with all applicable laws and regulations, including drainage improvements to those watercourses that have not been specifically identified for protection within the Protected Property, but only to the extent necessary to enable continued use of agricultural soils on property outside the Buffer. Subject to receiving the prior written approval of the Grantees and DEC, Grantor may create and maintain new man-made drainage improvements across the Protected Property, but only to the extent necessary to maintain productive agricultural soils outside the Protected Property for agricultural purposes, constructed in a manner to have minimum impact on natural water flow on the Protected Property, are otherwise consistent with the Purposes of this Grant, and comply with all applicable laws and regulations.

6. The right to manage beaver dams in accordance with best management practices established by the Agency of Natural Resources but only to the extent necessary to prevent or mitigate flooding outside of the Buffer.

7. The right to control invasive species, that have the potential to harm either riparian ecological integrity or agricultural productivity and viability, shall be permitted within the Buffer with the prior written approval of the Grantee, if in its sole discretion, the Grantee finds the control methodology, scope, and timing, as well as the species to be targeted, to be consistent in the long term with both creating and maintaining a forested Buffer, as well as with the Purposes of this Grant.

8. Subject to receiving the prior written approval of the Grantee, not to be unreasonably withheld, the right to place on the Protected Property temporary, portable agricultural structures (such as irrigation intakes, pump platforms, above ground piping), temporary recreational structures (such as hunting blinds) and one small seasonal dock or boat landing as long as these structures require no excavation or any tree removal other than as may be necessary for the ingress and egress of the temporary structure. Machinery associated with such uses shall be removed if not in use. All such structures or improvements shall not be protected from River or tributary flooding or movement, and any loss of the capital investment is assumed solely by the Grantor.

9. Only fences and at-grade fords of streams, both for agricultural purposes only, may be constructed, repaired, replaced, maintained or moved onto the Protected Property. Other structures and improvements may be constructed, repaired, replaced, maintained on the Protected Property only if specifically permitted under this Grant or as may be permitted in writing by Grantee if deemed by Grantee, in its sole discretion, to be consistent with the Purposes of this Grant.

IV. <u>Grantee's Rights</u>

Grantor and Grantee acknowledge and agree that achieving the Purposes of this Grant generally means no intervention in the physical changes that may occur in the course, current, or cross-section of the River. Achieving the Purposes of this Grant, however, may require limited management of the Protected Property. Therefore, in addition to the other rights and interests conveyed by this Grant, the following rights are hereby conveyed to the Grantee, and to the Grantee's designees, expressly intending to include the DEC, and the Grantee's agents, licensees, successors and assigns in interest:

1. A right of access over, across and within the Protected Property, upon reasonable notice, to conduct any and all activities provided hereunder or related to the Purposes of this Grant.

2. With the approval and participation of the Grantor, the right to mark the general boundaries of the Protected Property.

3. The right within the Protected Property, with approval from the DEC and consistent with the Purposes of this Grant, to conduct stream and channel management activities including, but not limited to: installing, maintaining, repairing, or removing structural elements or improvements including, but not limited to, bank revetments, levees, or earthen fills; adjusting bank height or otherwise manipulating the water courses. No such management activity shall be undertaken without adequate notice to the Grantor and due regard to the impact of such management activity on the Grantor's use of the Protected Property otherwise permitted under this Grant, particularly agricultural use; so that Grantor's capital investments in the Protected Property approved by the Grantee subsequent to this Grant, if any, and which will be lost due to management activity are reasonably considered but without the obligation to pay compensation for such loss.

4. The right to establish and maintain native woody vegetation within the Buffer, and the right to manage for exotic invasive species.

## V. Access to the Protected Property

Grantor does freely give, grant, sell, convey and confirm unto Grantee and its designees, licensees and its successors and assigns, forever, a perpetual and separately assignable easement for a right-of-way, said easement being on, over, under and across the farm crossing described in a Farm Crossing Agreement between the State of Vermont Agency of Transportation and Philip Parent and Suzanne Parent dated on or about even date herewith and to be recorded in the Sheldon Land Records. The farm crossing is located at or near the former Central Vermont RY. CO., valuation station 870+25.5 (milepost 16.482) in the Town of Sheldon, Vermont, and being more particularly described as follows:

A general access easement for pedestrian and vehicular access on, over and across other property of the Grantor, from the southerly side of Vermont Route 105.

Such access shall be for pedestrian and vehicular use only for access to the Protected Property for all rights and purposes conferred upon Grantee pursuant to this Grant including, but not limited to, management of the Protected Property and monitoring and enforcement by Grantees. No public use or access is permitted by this right-of-way. The rights conveyed herein are in addition to, not in lieu of, the covenants and restrictions otherwise conveyed by this Grant.

## VI. Enforcement of the Restrictions.

Grantee shall make reasonable efforts from time to time to assure compliance by Grantor with all of the covenants and restrictions herein. In connection with such efforts, Grantee may make periodic inspection of all or any portion of the Protected Property, and for such inspection and enforcement purposes, Grantee shall have the right of reasonable access to the Protected Property. In the event that Grantee becomes aware of an event or circumstance of non-compliance with this Grant, Grantee shall give notice to Grantor of such event or circumstance of non-compliance via certified mail, return receipt requested, and demand corrective action by Grantor sufficient to abate such event or circumstance of non-compliance and restore the Protected Property to its previous condition. In the event there has been an event or circumstance of non-compliance which is corrected through negotiation and voluntary compliance, but which has caused Grantee to incur extraordinary costs, including staff time, in investigating the non-compliance and securing its correction, Grantor shall, at Grantee's request, reimburse Grantee for all such costs incurred in investigating the non-compliance and in securing its correction.

Failure by Grantor to cause discontinuance, abatement, or such other corrective action as may be demanded by Grantee within a reasonable time after receipt of notice and reasonable opportunity to take corrective action shall entitle Grantee to bring an action in a court of competent jurisdiction to enforce the terms of this Grant and to recover any damages arising from such non-compliance. Such damages, when recovered, may be applied by Grantee to corrective action on the Protected Property, if necessary. If the court determines that Grantor has failed to comply with this Grant, Grantor shall reimburse Grantee for any reasonable costs of enforcement, including court costs and reasonable attorneys' fees, in addition to any other payments ordered by such court. In the event that Grantee initiates litigation and the court determines that Grantor has not failed to comply with this Grant and that Grantee has initiated litigation without reasonable cause or in bad faith, then the Grantee shall reimburse Grantor for any reasonable costs of defending such action, including court costs and reasonable attorneys' fees. The parties to this Grant specifically acknowledge that events and circumstances of non-compliance constitute immediate and irreparable injury, loss, and damage to the Protected Property and accordingly entitle Grantee to such equitable relief, including but not limited to injunctive relief, as the court deems just. The remedies described herein are in addition to, and not in limitation of, any other remedies available to Grantees at law, in equity, or through administrative proceedings.

No delay or omission by Grantee in the exercise of any right or remedy upon any breach by Grantor shall impair Grantee's rights or remedies or be construed as a waiver. Nothing in this enforcement section shall be construed as imposing a liability upon a prior owner of the Protected Property, when the event or circumstance of non-compliance occurred after said prior owner's ownership or control of the Protected Property terminated.

In addition, pursuant to the provisions of this Grant, the DEC as an intended third party beneficiary, has the right to enforce in the circumstance of the Grantor's non-compliance with this Grant.

VII.  Miscellaneous Provisions

1. Where Grantor is required, as a result of this Grant, to obtain the prior written approval of Grantee before commencing an activity or act, and where Grantees have designated in writing another organization or entity which shall have the authority to grant such approval, the approval of said designee shall be deemed to be the approval of Grantee. Grantor shall reimburse Grantee or Grantee's designee for all extraordinary costs, including staff time, incurred in reviewing the proposed action requiring Grantees' approval; but not to include those costs which are expected and routine in scope. Upon the request of Grantor, Grantee shall deliver to Grantor, in written recordable form, any approval, disapproval, election, or waiver given by Grantee pursuant to this Grant.

2. Grantor agrees that the construction of any buildings, structures, or improvements, or any use of the land otherwise permitted under this Grant, or the subdivision and separate conveyance of any land which may be approved by Grantee under Section II(8), above, shall be in accordance with all applicable ordinances, statutes, and regulations and at Grantor's sole expense.

3. It is further agreed that the Protected Property is accurately depicted and described in both the Parent River Corridor Conservation Plan and a Baseline Documentation Report ("BDR") signed by the original Grantor on or about the date of this Grant and held by Grantee. Grantee may use the Parent River Corridor Conservation Plan or BDR in enforcing this Grant, but are not limited in their use of the Parent River Corridor Conservation Plan and BDR to show a change of conditions.

4. Grantee shall transfer the development rights and river corridor conservation restrictions conveyed by Grantor herein only to a State agency, municipality, or qualified organization, as defined in Chapter 34 or Chapter 155 Title 10 V.S.A., in accordance with the applicable laws of the State of Vermont and the regulations established by the Internal Revenue Service governing such transfers.

5. In the event the development rights, and river corridor conservation restrictions conveyed to the Grantee herein are extinguished by eminent domain or other legal proceedings, Grantee shall be entitled to any proceeds which pertain to the extinguishment of Grantee's rights and interests. Any proceeds from extinguishment shall be allocated between Grantor and Grantee in accordance with the value of their respective interests as determined by an appraisal commissioned by Grantee at the time of extinguishment. Grantee shall use any such proceeds to preserve undeveloped and open space land in order to protect the aesthetic, agricultural, educational, scientific, forestry, and natural resources of the state through non-regulatory means.

6. In any deed or lease conveying an interest in all or part of the Protected Property, Grantor shall make reference to the grant of development rights, and river corridor conservation restrictions, and obligations described herein and shall indicate that said grant, easement and restrictions are binding upon all successors in interest in the Protected Property in perpetuity. Grantor shall also notify Grantee of the name(s) and address(es) of Grantor's successor(s) in interest.

7. Grantee shall be entitled to re-record this Grant, or to record a notice making reference to the existence of this Grant, in the Town of Sheldon Land Records as may be necessary to satisfy the requirements of the Record Marketable Title Act, 27 V.S.A., Chapter 5, Subchapter 7, including 27 V.S.A. §§603 and 605.

8. The term "Grantor" includes the heirs, executors, administrators, successors, and assigns of the original Grantor, Philip Parent and Suzanne Parent. The term "Grantee" includes the successors and assigns of the original Grantee, Vermont Land Trust, Inc.

9. Grantor shall pay all real estate taxes and assessments on the Protected Property and shall pay all other taxes, if any, assessed in lieu of or in substitution for real estate taxes on the Protected Property.

10. Grantor warrants that there are no notices by any governmental authority of any violation or alleged violation of, non-compliance or alleged non-compliance with, or any liability under any environmental law relating to the operations or conditions of the Protected Property.

Grantor further warrants that Grantor has no actual knowledge of a release or threatened release of hazardous materials, as such substances and wastes are defined by applicable federal and state law.

11. Grantor hereby promises to hold harmless and indemnify Grantee against all litigation, claims, demands, penalties and damages, including reasonable attorneys' fees, arising from or connected with the Protected Property, including but not limited to, ones arising from or connected to release or threatened release of any hazardous materials on, at, beneath or from the Protected Property, or arising from or connected with a violation of any environmental laws by Grantor or the actions or inactions of Grantor as owner or operator of the premises, or those of Grantor's agents. Grantor's indemnification obligation shall not be affected by any authorizations provided by Grantee to Grantor with respect to the Protected Property or any restoration activities carried out by Grantee.

12. This Grant is created pursuant to Chapter 34 of Title 10, Conservation and Preservation Rights and Interests (10 V.S.A. 821-823) and Chapter 155 of Title 10, Acquisition of Interests in Land by Public Agencies (10 V.S.A. 6301 – 6309), and this Grant shall be governed by and construed in accordance with the laws of the State of Vermont to effectuate the Purposes of the Grant. In the event that any provision or clause in this Grant conflicts with applicable law, such conflict shall not affect other provisions hereof which can be given effect without the conflicting provision. To this end the provisions of this Grant are declared to be severable.

INVALIDATION of any provision hereof shall not affect any other provision of this Grant.

TO HAVE AND TO HOLD said granted development rights, right of way, and a perpetual conservation restrictions, together with non-exclusive easements for access, with all the privileges and appurtenances thereof, to the said Grantee, **VERMONT LAND TRUST, INC.** and its successors and assigns, to their own use and behoof forever, and the said Grantor, **PHILIP PARENT** and **SUZANNE PARENT**, for themselves and their heirs, administrators, executors, successors, and assigns, does covenant with the said Grantee, its successors and assigns, that until the ensealing of these presents, it is the sole owner of the premises, and has good right and title to convey the same in the manner aforesaid, that the premises are free from every encumbrance, except those of record, not intending hereby to reinstate any interest or right terminated or superseded by this Grant, operation of law, abandonment or 27 V.S.A. Ch. 5, Subch. 7; and it hereby engages to warrant and defend the same against all lawful claims whatever, except as aforesaid.

I hereby set my hand at St. Albans, Vermont this 16th day of December, 2021.

GRANTOR

_____
Suzanne Parent

_____
Philip Parent

STATE OF VERMONT
FRANKLIN COUNTY, ss.

At St. Albans, this 16th day of December, 2021, Suzanne Parent and Philip Parent, personally appeared and he acknowledged this instrument, by him sealed and subscribed, to be his free act and deed and the free act and deed of Suzanne and Philip Parent, before me.

Print Name: Stephen McDonald
Notary Public, State of Vermont
Commission No. _____
My Commission Expires: 01/31/2023

*(Notary Seal: Stephen A. McDonald, Commission No. 0007972, Expires: Jan 31, 2023, Notary Public State of Vermont)*

========================================================

## SCHEDULE A
## PROTECTED PROPERTY

Being a portion of the lands and premises conveyed to Grantor by Warranty Deed of Ulys Parent and Helen Parent on November 17, 1987 and recorded in Book 42 Page 222 of the Sheldon Land Records. Said portion is described on the following survey:

The Protected Property consists of 38.39 acres, more or less, and is depicted as "River Corridor Easement Area" on a survey entitled "Easement Plat, River Corridor Easement to be Held by the Vermont Land Trust Over Lands of Suzanne and Philip Parent, Northerly of VT. Route 105, Town of Sheldon, County of Franklin, State of Vermont" prepared by Kittredge Land Surveying, PLLC dated September 7, 2021 and to be recorded herewith in Map Slide ___ of the Sheldon Land Records (referred to in this Grant as "the Survey").

Reference may be made to the above described deed and Survey, the records thereof, and to the deeds and records referred to therein, in further aid of this description.